UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KHANH NGOC-HOANG TRUONG,

                    Petitioner,                    Case No. 1:26-cv-1920

v.                                                 Hon. Hala Y. Jarbou

KEVIN RAYCRAFT et al.,

                    Respondents.

_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

## Discussion

### I.    Procedural History

The habeas petition challenges the lawfulness of Petitioner's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.10.) In an order entered on June 25, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 5.) Respondents filed their response on June 30, 2026. (ECF No. 7.)

## II.     Factual Background

Petitioner is a native and citizen of Vietnam who entered the United States on October 27, 1992, as a refugee. (Notice to Appear (NTA), ECF No. 7-1, PageID.85.). On December 1, 1993, Petitioner became a lawful permanent resident. (*Id.*) However, on May 18, 2000, the Department of Homeland Security (DHS) issued Petitioner a Form I-862, NTA, charging him with removability pursuant to section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(iii), after Petitioner was convicted of first-degree criminal sexual conduct. (*Id.*)

On July 25, 2002, an Immigration Judge ordered Petitioner removed to Vietnam. (Removal Order, ECF No. 7-4, PageID.96.) Petitioner waived his appeal of that order (*id.*), rendering it administratively final upon entry.[1] In 2004, the Embassy of Vietnam advised Petitioner that the "Governments of Vietnam and the United States have not reached any agreement on deportation" and, therefore, "the Embassy [could] not take any action regarding travel document requests for deportation cases." (Dec. 16, 2004, Correspondence, ECF No. 7-6, PageID.109.) In 2009 and 2010, ICE attempted to obtain a travel document for Petitioner; however, under the Memorandum of Agreement in effect at the time, Petitioner was not considered removable to Vietnam. (Bakko Decl. ¶ 10, ECF No. 7-2, PageID.90.)

On November 1, 2004, DHS released Petitioner from custody on an Order of Supervision. (Release Notification, ECF No. 7-5, PageID.99; Order of Supervision, ECF No. 7-7, PageID.111–112.)

---

[1] For the purposes of 8 U.S.C. § 1231(a), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals (BIA) affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

On February 11, 2026, ICE agents arrested Petitioner. (2026 Form I-213, ECF No. 7-8, PageID.115.) On February 21, 2026, DHS served Petitioner with a Form 71-091, Notice of Revocation of Release, advising Petitioner that his release was revoked pursuant to 8 C.F.R. § 241.13(i) because Petitioner failed to register as a sex offender. (Notice of Revocation of Release, ECF No. 7-10, PageID.120–121.)

On February 27, 2026, ICE requested that Petitioner complete forms for a Vietnam travel document, which Petitioner did. (Bakko Decl. ¶ 13, ECF No. 7-2, PageID.90.) On March 12, 2026, the local ICE office submitted the travel document request to ICE headquarters. (*Id.* ¶ 14, PageID.91.) ICE anticipates that Petitioner's removal will take place in the next two to three months. (*Id.* ¶ 17.) In fiscal year 2024, ICE removed 58 Vietnamese nationals to Vietnam. (*Id.* ¶ 18.)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by noncitizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

#### A.    Revocation of Release

Petitioner first contends that Respondents unlawfully detained Petitioner without a formal hearing concerning the revocation of Petitioner's Order of Supervision. (Pet., ECF No. 1,

PageID.6.) Respondents, however, contend that Petitioner is properly detained under 8 U.S.C. § 1231(a), following Petitioner's final order of removal entered on July 25, 2002.

Ordinarily, when an individual is issued a final order of removal, that person must be removed from the country within 90 days. 8 U.S.C. § 1231(a)(1)(A). Except for situations where the person is "detained or confined" in a case other than the "immigration process," or where a court orders a stay of removal, the 90-day removal period begins when the removal order becomes administratively final. *Id.* § 1231(a)(1)(B). Here, it is undisputed that Petitioner's order of removal is administratively final. (*See* Pet., ECF No. 1, PageID.6.)

Under § 1231(a)(6), the government is permitted to continue to detain individuals who are deemed "inadmissible" beyond the removal period, or it may release them under specified terms of supervision. *Id.* § 1231(a)(6). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001); *see* 28 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Consistent with § 1231(a)(6), Petitioner was released from detention with an Order of Supervision, dated November 4, 2004. The government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations—specifically, §§ 241.4 and 241.13—also govern the revocation of such noncitizens' release. The agency must comply with the applicable regulatory and statutory requirements. *See, e.g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954) ("[A]s long as the regulations remain operative, the

Attorney General denies himself the right to sidestep" those regulations), *superseded in part by statute on other grounds as recognized in DHS v. Thuraissigiam*, 591 U.S. 103, 135 (2020). As the Ninth Circuit has explained:

> The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.

*Sameena, Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) (cleaned up), *quoted in Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

The continued detention of noncitizens under a final order of removal is governed by 8 C.F.R. § 241.4(*l*)(2), which provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
>
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

Here, Petitioner was notified that his release was revoked because he violated a condition of release in failing to register as a sex offender and because circumstances had changed such that there was a significant likelihood of removal in the reasonably foreseeable future. (Notice of Revocation of Release, ECF No. 7-10, PageID.121.)

Contrary to Petitioner's assertions, the regulations governing release do not require a formal hearing. Instead, they provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(*l*)(1); 8 C.F.R. § 241.13(i). Petitioner's informal interview was scheduled for February 22, 2026. (Notice of Revocation of Release, ECF No. 7-10, PageID.122.) Petitioner does not claim that Respondents failed to comply with these regulations. Accordingly, the revocation of Petitioner's Order of Supervision provides no grounds for relief.

### B.      Detention Following Final Order of Removal

Given that Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. Petitioner, however, contends that his detention is unlawful. In response, Respondents argue that Petitioner has been detained for less than six months and cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future and, therefore, is not eligible for release.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of deportation became final in 2004. The 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable

period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[2] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Here, Petitioner has been detained less than six months. "Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing 533 U.S. at 699–701); *Ali v. DHS*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits." (citations omitted)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the default," and "the government bears no burden to justify detention," "but if a person can prove that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (cleaned up).

Petitioner contends that his detention is not reasonably foreseeable because DHS "had over twenty[-]four years to deport [Petitioner] to Vietnam" but has not done so. (Pet., ECF No. 1, PageID.7.) However, the record before the Court indicates that the circumstances present in 2004,

---

[2] The Supreme Court has held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

2009, and 2010, when DHS previously attempted to remove Petitioner, do not apply today as the United States removed 58 Vietnamese nationals to Vietnam in fiscal year 2024. (Bakko Decl. ¶ 18, ECF No. 7-2, PageID.91.) Therefore, Petitioner's assertions are insufficient to meet Petitioner's burden to *prove* that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Accordingly, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

### Conclusion

For the reasons discussed above, the Court will enter a judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated: July 6, 2026                         /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE